ORIGINAL

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

**OCT 18 2005**

CLERK, U.S. DISTRICT COURT
By _____
Deputy

| | | |
|---|---|---|
| CARNELL CORNELIUS ROLLINS, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:05-CV-1207-D |
| | § | |
| BRYAN COLLIER, DIRECTOR, | § | |
| PAROLE DIVISION OF TDCJ, | § | |
| | § | |
| Defendant. | § | |

## CONCLUSIONS AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

Pursuant to the District Court's Order of Reference, entered August 11, 2005, Defendant

Bryan Collier's ("Defendant") Motion to Dismiss, filed August 10, 2005, has been referred to the

United States Magistrate Judge for hearing, if necessary, and recommendation. Plaintiff Carnell

Cornelius Rollins ("Plaintiff") filed a response on August 12, 2005.

## BACKGROUND

In 1968, Plaintiff was arrested and charged with the felony of Fondling the Sexual Parts

of a Female Child with lascivious intent.[1]  Pursuant to a plea agreement, the court reduced the

charge to the misdemeanor of aggravated assault, to which Plaintiff plead guilty. The Criminal

District Court No. 4 of Dallas County, Texas convicted Plaintiff and sentenced him to six months

in Dallas County Jail.

In 1964, Plaintiff was convicted of burglary and served two years on probation. In 1970,

---

[1]In *Rollins v. Lewis*, 2002 WL 318332 (N.D. Tex, Feb. 26, 2002) (unpublished opinion), the Court previously considered the same facts currently before the Court. The Court takes judicial notice of the facts established in that case and, unless otherwise indicated, relies upon those facts in setting forth the background information for this case.

Plaintiff was convicted of possession of a forged instrument and served two years in the

Correctional Institutions Division of the Texas Department of Criminal Justice ("TDCJ-CID").

In 1981, Plaintiff was charged with the second-degree felony of Attempted Aggravated Rape, and

the Judicial District Court of Dallas County, Texas convicted Plaintiff of the lesser included

offense of misdemeanor assault.  In 1986, he was convicted of attempted murder and sentenced

to eighteen years.  He was released on parole in 1989, but Plaintiff's parole was revoked in 1991.

His parole was revoked because he possessed a firearm, and he was sentenced to ten years for

being a felon in possession.

Plaintiff was eligible for mandatory supervised release on August 11, 1995.  The Board of

Pardons and Paroles ("the Board") issued a Certificate of Mandatory Supervision, which outlined

the conditions of his parole.  At that time, sex offender conditions were not placed upon his

parole, but in the middle of September of 1995, he was transferred to a sex offender caseload.[2]

Plaintiff's parole was revoked in January of 1996, at which time the Board transferred

Plaintiff to an Intermediate Sanction Facility.  Plaintiff was again released on parole on May 22,

1996.  On August 5, 1996, the Board imposed three special conditions on Plaintiff's parole.  The

three special conditions required Plaintiff to participate in a sex offender program, undergo

psychological counseling, and refrain from having contact with the victim of the 1968 aggravated

assault.  In February of 1997, in violation of his parole conditions, Plaintiff contacted the victim

of his misdemeanor assault conviction, which resulted in Plaintiff's arrest.  The Board, however,

did not revoke his parole.  In January of 1998, Plaintiff's parole was revoked, and he returned to

---

[2]The basis for the imposition of sex offender conditions upon Plaintiff's parole was the 1968 charge of Fondling the Sexual Parts of a Female Child with lascivious intent and the 1981 charge of Attempted Aggravated Rape.

the TDCJ-CID.

Plaintiff states that he was eligible for mandatory supervised release on July 6, 2005, but, instead of being released, he was placed under house arrest and required to wear an electronic monitor. (*Pl.'s Pet.* at 4.)[3]  In addition, he indicates that he is still on a sex offender case load, although he has never been convicted of a sex crime. (*Id.*)

Plaintiff initiated this lawsuit on June 10, 2005, against Defendant, who is the Director of the Parole Division of the Texas Department of Criminal Justice. (*Def.'s Mot. to Dismiss* at 1.) Plaintiff alleges that Defendant's actions of placing him on a sex offender case load and electronic monitoring violate the ex post facto clause, U.S. CONST. art. I § 10 cl. 1, and due process clause, U.S. CONST. amend. XIV, of the United States Constitution. (*Id.*)

Defendant filed a motion to dismiss on August 10, 2005. Defendant asserts two reasons why the Court should grant his motion to dismiss. First, Defendant argues that the imposition of sex offender conditions and electronic monitoring on Plaintiff's parole does not violate the ex post facto clause because these conditions do not increase Plaintiff's punishment. (*Id.* at 3.) Second, Defendant asserts that he has not violated Plaintiff's due process rights because he was not personally involved in the imposition of Plaintiff's parole conditions. (*Id.*)

Plaintiff alleges that his damages from the imposition of sex offender conditions and electronic monitoring include: (1) he is listed as a sex offender on the internet; (2) he is unable to obtain employment as a "counselor intern," which is a requirement of becoming a licensed

---

[3]Plaintiff has amended his original petition three times. He filed an amended petition on July 20, 2005, a motion to amend on July 20, 2005, and a second motion to amend on August 23, 2005. The Court will refer to the petition and amended petitions as Plaintiff's Petition, First Amended Petition, Second Amended Petition, and Third Amended Petition.

counselor; (3) he is unable to select his own housing and to select with whom he lives; and (4) he is not allowed to interact with children. (*Pl.'s Third Am. Pet.* at 2-3.) Plaintiff requests declaratory and injunctive relief, removing his classification as a sex offender. (*Id.* at 4.) Plaintiff additionally seeks $100,000 in compensatory damages and $100,000 in punitive damages. (*Id.*)

## DISCUSSION

### I. Standard of Review

When considering a motion to dismiss, the Court accepts as true the factual allegations plead by the non-moving party and any reasonable inferences that the Court can draw from the factual allegations. *Sw. Airlines Co. v. Farechase, Inc.*, 318 F.Supp.2d 435, 437 (N.D. Tex. 2004) (citing *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061,1067 (5th Cir. 1994)). The non-moving party "must plead specific facts, not mere conclusory allegations" to survive a motion to dismiss. *Guidry v. Bank of LaPlace*, 954 F.2d 278, 281 (5th Cir. 1992). The movant cannot easily prevail because the law does not favor motions to dismiss. *Mahone v. Addicks Util. Dist. of Harris County*, 836 F.2d 921, 926 (5th Cir. 1988). Courts should not grant a motion to dismiss unless "it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

### II. Plaintiff's Ex Post Facto Claim

Plaintiff first argues that the imposition of sex offender conditions and electronic monitoring upon his parole violates the ex post facto clause. (*Pl.'s Pet.* at 1.) The goal of the ex post facto clause is to prevent the "government from enacting statutes with 'manifestly unjust and oppressive' retroactive effects." *Stogner v. California*, 539 U.S. 607, 611 (2003) (quoting

4

*Calder v. Bull*, 3 U.S. 386, 391 (1798)).  A state law violates the ex post facto clause if it

"retroactively . . . increase[s] the punishment for criminal acts." *Collins v. Youngblood*, 497 U.S.

37, 41 (1990).  When determining whether an ex post facto violation exists, the inquiry is two-

pronged.  *Cal. Dep't of Corr. v. Morales*, 514 U.S. 499, 504-05 (1995).  The first question the

Court must address is whether the two statutes at issue are retroactive as applied to Plaintiff.  *Id.*

The second question is whether the statutes increase Plaintiff's punishment.  *Id.*

Plaintiff's ex post facto claim involves two statutes - one statute that authorizes the

imposition of electronic monitoring and one statute that authorizes the imposition of sex offender

conditions upon his parole.  Section 508.317 of the Texas Government Code, which the

legislature enacted in 1997, authorizes the imposition of electronic monitoring.  TEX. GOV'T

CODE ANN. § 508.317 (Vernon 1997).  This section is entitled "Intensive Supervision Program;

Super-Intensive Supervision Program," and it authorizes the department to develop a program of

intensive parole supervision for those released inmates that a parole panel or the department

determines need such supervision.  *Id.*  Article 62.01 *et. seq.* of the Texas Code of Criminal

Procedure contain the most recent version of the Sex Offender Registration Program ("SORP"),

which was amended in 1999.  TEX. CRIM. PROC. CODE. ANN. art. 62.01 *et. seq.* (Vernon 1999).

The original SORP, however, was enacted in 1991. *Creekmore v. Attorney Gen. of Tex.*, 341

F.Supp.2d 648, 654 (E.D. Tex. 2004) (citing Act effective Sep. 1, 1991, 72d Leg., R.S., ch 572, §

1, 1991 Tex. Sess. Law Serv. 2029-32).  The SORP authorizes the imposition of certain

conditions upon the parole of inmates convicted of a "reportable conviction or adjudication" as

defined in Article 62.01.  TEX. CRIM. PROC. CODE. ANN. art. 62.01.  Plaintiff alleges that the sex

offender conditions imposed upon his parole include that he is listed as a sex offender on the

5

internet, he cannot pursue the employment of his choice, and he is not allowed to have contact with children. (*Pl.'s Third Am. Pet.* at 2-3.)

Because Defendant concedes that the statutes were applied retroactively to Plaintiff, the Court first addresses whether the statutes at issue are punitive in nature. (*Def.'s Mot. to Dismiss* at 3) (stating that "[w]hile the law at issue is retrospective, it does not create a sufficient risk of increasing Plaintiff's punishment.") The punitiveness of a statute is determined by utilizing an "intents-effects" test. *United States v. Ursery*, 518 U.S. 267, 288 (1996); *Moore v. Avoyelles Corr. Ctr.*, 253 F.3d 870, 872 (5th Cir. 2001); *Creekmore*, 341 F.Supp.2d at 659-660. The Court first examines whether the legislature intended the statute to be punitive and second, whether the statute is so punitive in nature that it overrides the statute's regulatory nature. *Ursery*, 518 U.S. at 288.

## A. Ex Post Facto Analysis for § 508.317

### 1. Did the legislature intend for § 508.317 to be punitive?

The first issue before the Court is whether the legislature intended § 508.317, which authorizes the imposition of electronic monitoring, to be punitive. Determining whether a statute is punitive is a question of statutory construction. *Smith v. Doe*, 538 U.S. 84, 92 (2003). The Court first must examine "the statute's text and its structure to determine the legislative objective." *Id.* When considering the statute's text and structure, the Court considers two primary factors - "the location and labels" of the statutory provision and the objectives of the statutory provision. *Id.* at 93-94. Turning to the location and label of the statutory provision, § 508.317 is not located in the Code of Criminal Procedure, which favors a finding that it is regulatory in nature. Tex. Gov't Code Ann. § 508.317. The statute's label, "Intensive

Supervision Program; Super-Intensive Supervision Program," does not favor a finding that the statute is either regulatory or punitive. *Id.* Turning next to the objectives of the statutory provision, the Court considers the legislative history of § 508.317, which states that:

> The legislature finds that there is a compelling state interest in placing inmates released on parole and mandatory supervision that will best protect public safety. The level of supervision of inmates released from the Texas Department of Criminal Justice should be appropriate based on their likelihood of committing new offenses, the nature of their original offenses, their performance in prison programs designed to rehabilitate inmates, and any other factor deemed by the parol panel to be relevant to their status. The legislature finds that there is a need for a program of intensive supervision of certain inmates whose histories indicate a propensity for violence. Regardless of whether an inmate's instant offense is a violent offense, there is a need for careful evaluation and review of each inmate released from prison to determine the need for supervision of the inmate.

Tex. H.B. 2918, 75th Leg., R.S. (1997). The legislative history indicates that the purpose of § 508.317 is to protect public safety, not to further punish parolees that fall within its purview.

The Southern District of Texas recently considered whether § 508.317 violates the ex post facto clause and concluded that the legislature did not intend § 508.317 to be punitive. *Uresti v. Collier*, No. Civ. A. H-04-3094, slip op. at 7 (S.D.Tex. June 23, 2005). The court relied upon the legislative history of the statute to conclude that "the statute was drafted to further the compelling state interest of protecting public safety, and not to punish." *Id.* The Court agrees with the analysis in *Uresti* and accordingly finds that § 508.317 is civil and regulatory, not punitive.

### 2. Do the punitive effects of § 508.317 override its civil purpose?

Having found that the statute at issue is regulatory in purpose, the second prong of ex post facto analysis is to examine whether the statute is so punitive in effect that it overcomes its civil purpose. Plaintiff alleges that placing him under "house arrest via electronic monitoring" is

7

punitive in effect. (*Pl.'s Pet.* at 1.)  He argues that Defendant infringed upon his constitutional

right to parole by placing him under electronic monitoring. (*Pl.'s Resp. to Mot. to Dismiss* at 3.)

Parole is defined as "the discretionary and conditional release of an eligible prisoner sentenced to

an institutional division so that the prisoner may serve the remainder of his sentence under the

supervision and control of the pardons and paroles division." *Madison v. Parker*, 104 F.3d 765,

768 (5th Cir. 1997) (citing TEX. CRIM. PROC. CODE. ANN. art. 42.18 § 2(1) (Vernon 1996)).

Electronic monitoring is the method the Board of Pardons and Paroles uses to monitor Plaintiff

while he is on parole.  Plaintiff is serving the remainder of his sentence and is therefore still

under the supervision of the Board.  Electronic monitoring does not extend Plaintiff's

punishment because Plaintiff is still serving his sentence.

The court in *Uresti*, having also found that § 508.317 has a civil purpose, concluded that

the plaintiff had "presented no proof that the conditions are punitive or that the retroactive effect

of the statute otherwise imposes punishment rising to the level of an ex post facto violation."

No. Civ. A. H-04-3094, slip op. at 7.  The plaintiff in that case also had electronic monitoring

imposed on his parole and, additionally, was required to reside at a halfway house. *Id.* at 1.

Similarly to the court in *Uresti*, the Court finds that Plaintiff has alleged no set of facts that, if

taken as true, illustrate that the effects of § 508.317 are punitive enough to amount to an ex post

facto violation.

The Court finds that the legislature intended § 508.317 to be civil and regulatory and that

Plaintiff has not demonstrated that the effects of the statute are punitive enough to overcome that

purpose.  Accordingly, the Court finds that Plaintiff's claim that § 508.317 violates the ex post

facto clause should be dismissed.

8

**B. Ex Post Facto Analysis for the SORP**

Now the Court turns to the issue of whether the sex offender conditions imposed on Plaintiff violate the ex post facto clause. As indicated above, this is a two-pronged inquiry. *Morales*, 514 U.S. at 504-05 (indicating that an ex post facto violation consists of: (1) a retroactive law, and (2) a statutory increase of punishment). The Court does not address the first prong - whether the law is retroactively applied - because Defendant concedes retroactivity. (*Def.'s Mot. to Dismiss* at 3.) Instead, the Court now addresses the second prong - whether the sex offender registration statute is punitive. This inquiry involves first examining the legislature's intent in enacting the statute, and second, examining whether the statute is so punitive in effect as to override the legislature's intent. *See Ursery*, 518 U.S. at 288; *Avoyelles Corr. Ctr.*, 253 F.3d at 872 (outlining the "intents-effects" test for determining if a statute is punitive).

**1. Did the legislature intend for the SORP to be punitive?**

To determine the legislature's intent, the Court first examines the location and label of the statute. *See Smith v. Doe*, 538 U.S. at 93-94 (explaining that, when looking at the text of a statute to see if it is punitive, courts should look to the "location and labels" and objective of a statutory provision). The sex offender registration scheme is located in the Texas Code of Criminal Procedure, but "the location . . . of a statutory provision [does] not by [itself] transform a civil remedy into a criminal one." *Smith v. Doe*, 538 U.S. at 94. The Court, therefore, examines the history of the statute to determine the legislature's intent. *See id.* at 93-94 (illustrating that the objective of a statute may be discerned by studying the legislative history).

Texas originally enacted the SORP in 1991 and subsequently amended it in 1993, 1995,

9

1997, and 1999. *Creekmore*, 341 F.Supp.2d at 654 (citing Act effective Sep. 1, 1991, 72d Leg.,

R.S., ch 572, § 1, 1991 Tex. Sess. Law Serv. 2029-32; Act effective Aug. 30, 1993, 73d Leg.,

R.S., ch. 866, § 1, 1993 Tex. Sess. Law Serv. 3423; Act effective Sep. 1, 1995, 74th Leg., R.S.

ch. 258, § 1, 1995 Tex. Sess. Law Serv. 2197; Act effective Sep. 1, 1999, 76th Leg., R.S., ch.

444, § 1, 1999 Tex. Sess. Law Serv. 2824). The legislature enacted the SORP pursuant to the

Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Act, 42

U.S.C. § 14071 (1994), Megan's Law, 42 U.S.C. § 14071(d) (1996), and the Pam Lychner

Sexual Offender Tracking and Identification Act of 1996, 42 U.S.C. § 14072 (1996). *See*

*Creekmore* 341 F.Supp.2d at 653-54 (explaining the genesis of Texas's sex offender registration

program). The purpose of these federal statutes was to protect the public from sexual offenders

by encouraging states to implement registration programs for sexual offenders. *Smith v. Doe*,

538 U.S. at 90. The legislature's purpose in passing the SORP, therefore, was to protect the

public, not to further punish offenders falling within the scope of the program. Other courts that

have addressed whether sex offender registration programs violate the ex post facto clause agree

that these programs do not have a punitive purpose. *See, e.g., Smith v. Doe*, 538 U.S. at 92-97;

*Neal v. Shimoda*, 131 F.3d 818, 827 (9th Cir. 1997); *see also Seiling v. Young*, 531 U.S. 250,

261-62 (2001); *Kansas v. Hendricks*, 521 U.S. 346, 361-63 (1997) (holding that acts requiring

the civil commitment of sexually violent predators are civil in nature). Texas state courts that

have addressed this issue also agree that the SORP is a civil statute. *See, e.g., Coronado v. State*,

148 S.W.3d 607, 610-11 (Tex. App.– Houston 2004); *Rodriguez v. State*, 93 S.W.3d 60, 66 (Tex.

Crim. App. 2002); *Dean v. State*, 60 S.W.3d 217, 219-20 (Tex. App. – Houston 2001, pet. ref'd).

    The Court is further convinced that the SORP is civil and regulatory in nature by the

language of the statute itself. The sex offender program requires that a committee assess the risk of each sex offender, and the sex offender's notification requirements are dependent on his/her risk level. *See* TEX. CRIM. PROC. CODE. ANN. art. 62.035, 62.045 (Vernon 1997). This requirement indicates that the requirements of sex offender registration are focused upon the risk an offender poses to the community, not upon the level of punishment an offender deserves. Accordingly, the Court finds that the legislature's intent in passing the SORP was to protect the public. Thus, the statute has a civil, regulatory purpose.

### 2. Do the punitive effects of the SORP override its civil purpose?

Having established that the legislature intended the SORP to be civil, the next step is to determine if the statute is so punitive in effect that it overcomes the civil purpose. *See Ursery*, 518 U.S. at 288 (indicating that the second step of the "intents-effects" test is to determine whether the statute's effects are punitive). Plaintiff complains of three aspects of the sex offender registration - his name is listed on the internet, he is unable to obtain the employment of his choice, and he cannot interact with children. (*Pl.'s Third Am. Pet.* at 2-3.) The Court's role is to examine Plaintiff's claim, assuming the facts he alleges are true, to determine if the SORP is punitive in effect. *See Tuchman*, 14 F.3d at 1067 (explaining that when considering a motion to dismiss courts must accept as true all factual allegations of the non-moving party). This inquiry does not subjectively examine how the statute has specifically affected Plaintiff. *See Seiling*, 531 U.S. at 263 (rejecting an "as applied" ex post facto approach because "such an analysis would never conclusively resolve whether a particular scheme is punitive"). Instead, the Court objectively examines the conditions imposed upon Plaintiff to see if they are punitive in effect.

11

The first condition Plaintiff complains of is that "the defendant or his predecessors or subordinates have placed [P]laintiff on the World Wide Web . . . or Google.com as having a charge or conviction for 'sexual assault of a child.'" (*Pl.'s Third Am. Pet.* at 1.)  Plaintiff states that this label is untrue because he has never been arrested or charged with sexual assault of a child.  (*Id.*)  The United States Supreme Court addressed whether internet publication of personal information is punitive in *Smith v. Doe*, 538 U.S. at 99.  The Court determined that internet notification is not punitive because "the principal effect of notification [is] to inform the public for its own safety, not to humiliate the offender." *Id.*  Any public stigma Plaintiff experiences is a result of public opinion, not the registration scheme. *Creekmore*, 341 F.Supp.2d at 661.  In addition, the public already has access to records of Plaintiff's convictions because a criminal history is a public record. *Id.* at 662.

Even if the internet notification does falsely label Plaintiff as having been convicted or charged with sexual assault of a child, the sex offender program is still not punitive.  This label closely resembles a crime with which Plaintiff has been charged - Fondling the Sexual Parts of a Female Child with lascivious intent - and Plaintiff has been convicted of aggravated assault of a child.  Although a misleading label may have negative effects upon Plaintiff, "a law serving nonpunitive goals 'is not punishment, even though it may bear harshly on one affected.'" *Avoyelles Corr. Ctr*, 253 F.3d at 873 (quoting *Flemming v. Nestor*, 363 U.S. 603, 614 (1960)). Plaintiff can only overcome the statute's regulatory purpose with the clearest proof that the statute is punitive in effect, and Plaintiff has not met this burden. *Hudson v. United States*, 522 U.S. 93, 100 (1997) (stating that "'only the clearest proof' will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty) (quoting

12

*States v. Ward*, 448 U.S. 242, 249 (1980)).

The second condition Plaintiff complains of is that he cannot secure employment as a "counselor intern," which is necessary for him to become a licensed counselor. (*Pl.'s Third Am. Pet.* at 2-3.) To survive a motion to dismiss, Plaintiff must plead specific facts, "not mere conclusory allegations." *Guidry*, 954 F.2d at 281. Plaintiff has not isolated any specific manner in which the SORP has denied him employment opportunities, nor has Plaintiff even alleged that an employer has refused to hire him because of his sex offender status. Even if Plaintiff has been denied employment because of his sex offender status, "the effects . . . stem not from the statute, but from the community response." *Creekmore*, 341 F.Supp.2d at 661 (citing *Rodriguez v. State*, 93 S.W.3d 60, 71 (Tex. Crim. App. 2002)).

The final condition Plaintiff complains of is that he cannot have contact with children. (*Pl.'s Third Am. Pet.* at 3.) The purpose of this condition is obviously to protect the public. Although Plaintiff was not convicted of a sex offense with a child, he has been convicted of assaulting a child. Any punitive effects it has upon Plaintiff are secondary to the primary purpose of protecting the public and do not transform the SORP into a punitive statutory scheme.

The Court finds that the legislature had a civil, regulatory purpose when it enacted the SORP, and Plaintiff has not shown with the clearest proof that the punitive effects of this statute outweigh its civil purpose. Because Plaintiff has alleged no set of facts, that if taken as true, illustrate that the SORP is punitive in purpose or in effect, the Court finds that Plaintiff's claim that this program violates the ex post facto clause should be dismissed.

### III. Plaintiff's Due Process Claim

The Court now turns to Plaintiff's claim that the imposition of house arrest and sex offender conditions upon his parole violates his procedural due process rights.  Plaintiff claims that Defendant violated his due process rights by imposing house arrest and sex offender conditions upon his parole without providing him a hearing.  Before reaching the merits of this claim, the Court first addresses Defendant's argument that the due process claim should be dismissed because Defendant had no personal involvement in determining the conditions of Plaintiff's release.  (*Def.'s Mot. to Dismiss* at 3.)  Defendant states the Board of Pardons and Paroles alone determines the conditions of inmates' release and that Defendant personally is only responsible for "the investigation and supervision of releasees."  (*Id.*)

Supervisory officials cannot be held vicariously liable for their subordinates' actions under 42 U.S.C. § 1983.  *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691-95 (1978); *Bigford v. Taylor*, 834 F.2d 1213, 1220 (5th Cir.1988); *Thibodeaux v. Arceneaux*, 768 F.2d 737, 739 (5th Cir.1985) (per curiam).  For liability to attach, supervisory officials must: (a) affirmatively participate in acts that cause a constitutional deprivation, or (b) implement unconstitutional policies that causally result in the plaintiff's injury.  *See Thompkins v. Belt*, 828 F.2d 298, 303 (5th Cir. 1987); *see also Grandstaff v. City of Borger*, 767 F.2d 161, 169-70 (5th Cir. 1985).

Plaintiff has not provided any facts supporting a contention that Defendant affirmatively participated in imposing house arrest or sex offender conditions upon his parole.  Instead, Plaintiff merely alleges that, as Director of the Board of Pardons and Paroles, Defendant is

14

responsible for all actions of the Board. (*Pl.'s Resp. to Mot. to Dismiss* at 1.) Plaintiff provides no support for this contention, and "mere conclusory allegations" are not enough to survive a motion to dismiss. *Guidry*, 954 F.2d at 281. Nor does Plaintiff provide facts demonstrating that Defendant implemented the policies that denied Plaintiff a hearing. In addition, as Defendant indicates in his motion to dismiss, Defendant is not the Director of the Board of Pardons and Paroles as Plaintiff claims he is. (*Def.'s Mot. to Dismiss* at 1.) He is the Director of the Parole Division of the Texas Department of Criminal Justice. (*Id.*) Plaintiff must plead some facts that, if true, illustrate Defendant's personal involvement in allegedly depriving him of due process. Because Plaintiff has failed to do so, the Court finds that Plaintiff's due process claim should also be dismissed because he has not alleged any set of facts showing that Defendant was personally involved in allegedly imposing parole conditions without due process.

## CONCLUSION

The Court finds that § 508.317 of the Texas Government Code, which authorizes the imposition of house arrest upon Plaintiff, and the SORP, which authorizes the imposition of sex offender conditions upon Plaintiff, do not violate the ex post facto clause. The Court's findings are based upon the conclusions that: (1) the legislature intended these statutes to be civil and (2) Plaintiff has not alleged facts, that if taken as true, illustrate that the statutes are so punitive in effect as to overcome the legislature's civil intent. The Court also finds that Plaintiff has not alleged sufficient facts to indicate that Defendant was personally involved in allegedly depriving Plaintiff of due process.

## RECOMMENDATION

Accordingly, the Court recommends that Plaintiff's ex post facto and due process claims against Defendant Bryan Collier[4] should be dismissed with prejudice and that Defendant's motion to dismiss should be **GRANTED**.

Signed this 18 day of October, 2005.

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE

---

[4]Plaintiff originally only sued Defendant Bryan Collier. In his third amended petition, he added Defendant Bryan Collier's "successors in office and present officials in their official and individual capacities who participated in labeling, classifying, supervising, and publishing the false information" as defendants. (*Pl.'s Third Am. Pet.* at 4.) The Court's recommended dismissal only applies to Defendant Bryan Collier.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

The United States District Clerk shall serve a true copy of these conclusions and recommendation on the parties. Pursuant to Title 28, United States Code, Section 636(b)(1), any party who desires to object to these conclusions and recommendation must serve and file written objections within ten days after being served with a copy. A party filing objections must specifically identify those conclusions or recommendation to which objections are being made. The District Court need not consider frivolous, conclusory or general objections. A party's failure to file such written objections to these proposed conclusions and recommendation shall bar that party from a *de novo* determination by the District Court. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985). Additionally, any failure to file written objections to the proposed conclusions and recommendation within ten days after being served with a copy shall bar the aggrieved party from appealing the legal conclusions of the Magistrate Judge that are accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

PAUL D. STICKNEY
UNITED STATES MAGISTRATE JUDGE